IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

REBECCA E. LITTLEFIELD, o/b/o C.E.L.,

                              Plaintiff,

         vs.                                    Civil Action No.
                                                7:05-CV-1261 (LEK/DEP)

MICHAEL K. ASTRUE, Commissioner
of Social Security,[1]

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

CONBOY, McKAY LAW FIRM              PETER L. WALTON, ESQ.
407 Sherman St.
Watertown, NY 13601-9990

FOR DEFENDANT:

HON. GLENN T. SUDDABY               WILLIAM H. PEASE, ESQ.
United States Attorney for the      Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

_____

[1]      Plaintiff's complaint, which was filed on October 5, 2005, named Jo Anne
B. Barnhart, the former Commissioner of Social Security, as the defendant.  On
February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He
has therefore been substituted as the named defendant in this matter pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in
order to effectuate this change.  *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL          BARBARA L. SPIVAK, ESQ.
Social Security Administration           Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                  SIXTINA FERNANDEZ, ESQ.
                                    Assistant Regional Counsel


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Rebecca E. Littlefield has commenced this action on behalf

of her minor daughter, C.E.L., seeking judicial review of an administrative

determination denying her daughter's application for children's

supplemental security income ("SSI") benefits under the Social Security

Act (the "Act").  In support of her challenge plaintiff contends, *inter alia*,

that C.E.L. suffers from anxiety, depression, and an oppositional defiant

disorder, cumulatively resulting in deficiencies in her functional

development, and that this combination of conditions renders her disabled

within the meaning of the Act.[2]

Having carefully reviewed the available evidence assembled in the

_____

[2]      In her application for benefits, plaintiff also asserted that C.E.L. suffers
from an auditory processing disorder.  *See* Administrative Transcript at 105-06.  While
that disorder is also referenced in plaintiff's brief in connection with this proceeding,
*see* Plaintiff's Brief (Dkt. No. 7) at 4, during the hearing before the agency her counsel
represented that C.E.L.'s hearing acuity is not in issue.  *Id.* at 61.  While one could
argue that there is a distinction, however subtle, between hearing acuity and auditory
processing, the clear import of that statement by counsel was that C.E.L.'s hearing
impairment was not being advanced to support plaintiff's claim of disability, and the
Commissioner's determination was plainly made based upon that assumption.

2

administrative record, including C.E.L.'s pertinent medical and educational records as well as plaintiff's hearing testimony, I conclude that the Commissioner's finding that C.E.L. is not disabled was based upon the application of proper legal principles and is supported by substantial evidence.  Accordingly, I recommend that the agency's determination be affirmed, and plaintiff's complaint be dismissed.

I.      BACKGROUND

C.E.L. was born in 1992; at the time of the administrative hearing in this matter, she was twelve years of age.  Administrative Transcript at 65-66, 101.[3]  When application was made on her behalf for SSI benefits, C.E.L. was four feet and nine inches in height, and weighed approximately one hundred twenty pounds.  AT 103.  Claimant resides together with her mother, father, and older sister in a home in Glen Park, New York.  AT 66, 102.

In October of 2004, when the administrative hearing was conducted, C.E.L. was in the seventh grade, and attended school in the General Brown Central School District.  AT 67, 188-195.  By all accounts, C.E.L. has struggled somewhat academically.  In the sixth grade C.E.L. earned a

---

[3]      Portions of the administrative transcript of evidence and proceedings before the agency, Dkt. No. 6, filed by the Commissioner together with his answer in this matter, will be cited herein as "AT ___."

3

cumulative average of 68.6 among her core courses of language arts, social studies, science and math, with her final grades in those subjects ranging from a low of 65 to a high of 72.  AT 196.  A Wechsler Intelligence Scale for Children-Third Edition (WISC-III) test administered by school officials revealed intelligent quotient ("IQ") scores for C.E.L. of 84 in the area of verbal intelligence, placing her in the fourteenth percentile; 78, in the field of performance intelligence, ranking her at the seventh percentile; and 79 in full scale intelligence, placing her in the bottom eight percent. AT 238.

Plaintiff has been identified as disabled by the school district's Committee on Special Education ("CSE") and classified as suffering from an emotional disability, and accordingly is being provided with special education services, pursuant to an Individualized Education Program ("IEP") prepared by the CSE.  AT 247.  That plan calls for a reduction in C.E.L.'s homework assignments, use of a teacher aide in core subjects, a reduced teacher-to-student ratio in home room and study halls, testing modifications, and various other accommodations.  AT 67-68; 188-95.  In light of various outside assistance received by her daughter from mental health professionals, however, plaintiff has refused the offer of counseling services for C.E.L. within the school setting.  AT 190.

4

As a result of her mental condition, which is generally described as including symptoms of anxiety and depression, C.E.L. has experienced feelings of sadness, suicidal ideation, and apprehension that she will do something wrong, and has exhibited various inappropriate behavior including crying, begging not to go to school, and being aggressive around the parents and the family's pet. AT 70-72. C.E.L.'s aggressive behavior, however, appears to be more prevalent at home than in school. In response to a request for information on November 25, 2003, Katherine M. Pisarski, responded on behalf of school officials, noting as follows:

> [C.E.L.] appears to act quite differently (inappropriately, even violently) at home than she does at school. – She is able, with help, structure, and medication, to function at school – support services and parent-school communication are needed for this.

AT 154.

C.E.L. has been provided with treatment and counseling for her symptoms from various sources, including at the Mercy Center for Behavioral Health & Wellness, where she has been seen over time by Jennifer Stowell, an intake counselor, and Dr. Michael Camillo, AT 164-175; 231-236; Dr. Jeanne Emery, Psy. D, of the North Country Children's Clinic, AT 178-82; 241-44; and Jeffrey Aronowitz, M.D., plaintiff's treating

5

psychiatrist.  AT 183-87.  At various times, plaintiff has been diagnosed as suffering from a depression disorder with a "Severe Anger Management Disorder", AT 166; a depressive disorder not otherwise specified ("NOS") requiring that anxiety disorder NOS be ruled out, AT 167; *see also* AT 184, 249; and anxiety disorder NOS and disruptive behavior NOS, AT 249, and has been prescribed various medication including Prozac, Celexa, Depokene, Topamax and Lithium.  AT 183, 186, 190, 236, 253.  While C.E.L. has experienced difficulty over time taking the prescribed medications, her mother reports in general they have had a positive impact upon her child's behavior.  AT 71-72, 83.

According to her mother, C.E.L. has difficulty making friends and getting along with peers.  AT 79.  C.E.L. is easily frustrated and has difficulty with even simple tasks as well as homework and with personal hygiene.  AT 76, 81.  C.E.L. often engages in disruptive behavior and throwing of temper tantrums.  AT 82-83.  C.E.L. is able to watch television, although the contents are not always age appropriate, AT 75; is a member of a YMCA swim team, AT 77; and additionally plays soccer, AT 165.

II.   PROCEDURAL HISTORY

A.   Proceedings Before The Agency

On October 6, 2003, plaintiff applied for SSI benefits on behalf of

6

C.E.L., her daughter, asserting disability with a corresponding onset date of February 4, 2002.  AT 95.  Following the denial of that application on December 30, 2003, AT 87, a hearing was conducted on October 13, 2004, at plaintiff's request, before Administrative Law Judge ("ALJ") Barry Anderson, by video conference, to address plaintiff's claim for benefits. AT 57-86.  ALJ Anderson subsequently issued a decision on October 27, 2004, finding that C.E.L. was not disabled at the relevant times, and thus denying her mother's application for benefits on her behalf.  AT 42-51.

In his decision, ALJ Anderson engaged in a *de novo* review of the evidence before the agency, applying the governing, three-step test for determining childhood disability.  *Id.*  After first observing that C.E.L. had not engaged in substantial gainful activity at the relevant times, AT 45, the ALJ next found that she suffers from various impairments of significance, including a depressive disorder, an anxiety disorder, and a disruptive behavior (oppositional defiant) disorder, with borderline to low average intellectual functioning, concluding that those conditions are sufficiently severe to satisfy the modest requirements under step two of the disability analysis.  *Id.*  ALJ Anderson went on to determine, however, that C.E.L.'s diagnosed conditions do not meet or medically equal in severity any of the conditions set forth in the listing of presumptively disabling impairments

7

contained within the governing regulations, *see* 20 C.F.R. Pt. 404, Subpt.
P, App. 1.  AT 45-46.

ALJ Anderson next turned to determining whether C.E.L. has an
impairment that is functionally equal to any of the relevant listed
conditions, addressing the pertinent focal areas in the functional
equivalency calculus.  AT 46-50.  Based upon his review of the record, the
ALJ found no extreme limitations in any of the six specified relevant
domains, and a marked limitation in only one – the area measuring the
ability to interact with or relate to others – accordingly concluding that
C.E.L. is not disabled, and ruling her ineligible for SSI benefits.  AT 48-49.
The ALJ's opinion became a final determination of the Commissioner
when, on August 30, 2005, the Social Security Administration Appeals
Council denied plaintiff's request for review of that decision.  AT 5-7.

B.    This Action

Plaintiff commenced this action on October 5, 2005.  Dkt. No. 1.
Issue was thereafter joined by the Commissioner's filing on January 12,
2006 of an answer, accompanied by an administrative transcript of the
proceedings and evidence before the agency.  Dkt. No. 5, 6.  With the
filing of plaintiff's brief on February 24, 2006, Dkt. No. 7, and that on behalf
of the Commissioner on April 4, 2006, the matter is now ripe for

determination and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).[4]  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Scope Of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart,* 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen,* 817 F.2d

983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether

the Commissioner applied the proper legal standards, his decision should

not be affirmed even though the ultimate conclusion reached is arguably

supported by substantial evidence.  *Martone,* 70 F. Supp. 2d at 148.  If,

---

      [4]      This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998 and was subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 216-17 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone*, 70 F. Supp. 2d at 148 (quoting *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing

*Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 715 S. Ct. 456, 464
(1951).

When a reviewing court concludes that incorrect legal standards
have been applied, and/or that substantial evidence does not support the
agency's determination, the agency's decision should be reversed.  42
U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the
court may remand the matter to the Commissioner under sentence four of
42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to
develop a full and fair record or to explain his or her reasoning.  *Martone*,
70 F. Supp. 2d at 148 (citing *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.
1980)).  A remand pursuant to sentence six of section 405(g) is warranted
if new, non-cumulative evidence proffered to the district court should be
considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and
Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without
remand, while unusual, is appropriate when there is "persuasive proof of
disability" in the record and it would serve no useful purpose to remand
the matter for further proceedings before the agency.  *Parker*, 626 F.2d at
235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir.
1992); *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 644
(2d Cir. 1983).

B.    Childhood Disability Determination:  The Three-Step
      Evaluation Process

In 1996 Congress significantly altered the childhood disability terrain

for purposes of eligibility for SSI benefits under the Social Security Act by

enacting the Personal Responsibility and Work Opportunity Reconciliation

Act of 1996 ("PRWORA").  Pub. L. No. 104-193, 110 Stat. 2105 (1996).[5]

In accordance with the PRWORA, which took effect on August 22, 1996,

an individual under the age of eighteen is disabled, and thus eligible for

SSI benefits, if he or she

> has a medically determinable physical or mental
> impairment, which results in marked and severe
> functional limitations, and which can be expected
> to result in death or which has lasted or can be
> expected to last for a continuous period of not less
> than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).  That definitional provision goes on to

exclude from coverage any "individual under the age of [eighteen] who

engages in substantial gainful activity. . . ."  42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative

process to be employed in determining whether a child can meet the

_____

[5]      Entitlement to SSI benefits is governed by a federal program intended to
provide benefits to needy aged, blind, or disabled individuals who meet certain
statutory income and resource limitations.  42 U.S.C. § 1381; *see Schweiker v. Wilson*,
450 U.S. 221, 223, 101 S. Ct. 1074, 1077 (1981).

statutory definition of disability.  20 C.F.R. § 416.924; *Kittles v. Barnhart,*
245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*,
02Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003)
(Gorenstein, M.J.), *adopted*, No. 02 Civ 3127, Dkt. No. 18 (S.D.N.Y. July
25, 2003) (Preska, D.J.).  The first step of the test, which bears some
similarity to the familiar five-step analysis employed in adult disability
cases, requires a determination of whether the child has engaged in
substantial gainful activity.  20 C.F.R. § 416.924(b); *Kittles,* 245 F. Supp.
2d at 488.  If so, then both statutorily and by regulation the child is
ineligible for SSI benefits.  42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. §
416.924(b).

    If the claimant has not engaged in substantial gainful activity, the
prescribed test next requires examination of whether the child suffers from
one or more medically determinable impairments that, either singly or in
combination, are properly regarded as severe, in that they cause more
than a minimal functional limitation.  20 C.F.R. § 416.924(c); *Kittles*, 245 F.
Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If the existence of a
severe impairment is discerned, the agency must then determine whether
it meets or equals a presumptively disabling condition identified in the
listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1

(the "Listings").  *Id.*  Equivalence to a listing can be either medical or

functional.  20 C.F.R. § 416.924(d); *Kittles,* 245 F. Supp. 2d at 488;

*Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or

qualify as medically or functionally equivalent to, a listed disability and the

twelve-month durational requirement is satisfied, the claimant will be

deemed disabled.  20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL

21032012, at *8.

   Under final regulations which became effective on January 2, 2001,

resulting in material revision of the test dictated under the superceded

interim rules, *see, e.g., Kittles*, 245 F. Supp. 2d at 488-89, analysis of

functionality is informed by consideration of how a claimant functions in six

main areas denominated as "domains."  20 C.F.R. § 416.926a(b)(1);

*Ramos*, 2003 WL 21032012, at *8.  The domains are described as "broad

areas of functioning intended to capture all of what a child can or cannot

do."  20 C.F.R. § 416.926a(b)(1).  Those prescribed domains include

> (i)     [a]cquiring and using information;
> (ii)    [a]ttending and completing tasks;
> (iii)   [i]nteracting and relating with others;
> (iv)    [m]oving about and manipulating objects;
> (v)     [c]aring for [oneself]; and
> (vi)    [h]ealth and physical well-being.

20 C.F.R. § 416.926a(b)(1).  Functional equivalence is established in the

event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).  Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  As plaintiff notes, "[a] marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. 404, Subpt. P, App. 1, § 112.00(C).

    C.    <u>The Evidence In This Case</u>

    In support of her challenge to the ALJ's decision, plaintiff first contends that the ALJ erred in concluding that C.E.L.'s disability did not meet any of the listed, presumptively disabling conditions, arguing that her impairments meet, or at a minimum medically equal, the criteria of listings

112.04, 112.06, and 112.08.  Plaintiff also maintains, alternatively, that the ALJ's analysis of functional equivalency, conducted pursuant to the guidelines set forth in the governing regulations, was flawed, and that in determining disability ALJ Anderson placed undue emphasis upon opinions of agency consultants and did not afford appropriate deference to the findings of plaintiff's treating professionals, including Dr. Emery and Dr. Aronowitz.  Lastly, plaintiff maintains that in arriving at his determination the ALJ improperly assessed the credibility of her testimony regarding C.E.L.'s limitations.

### 1.   The ALJ's Rejection of Listings 112.04, 112.06, and 112.08

In his decision ALJ Anderson considered, but rejected, applicability of listings 112.04 (mood disorders), 112.06 (anxiety disorders) and 112.08 (personality disorders) to C.E.L.'s circumstances, finding that her condition neither meets nor medically equals any of those presumptively disabling conditions.  AT 46.  To meet any of those three listings, a child in C.E.L.'s age bracket must satisfy at least two of the appropriate age-group criteria detailed in subparagraph (B)(2) of listing 112.02.  That section, in turn, requires marked impairment in at least two of four specified areas, including age-appropriate cognitive/communicative function, age-

16

appropriate social functioning, age-appropriate personal functioning, and maintenance of concentration, persistence or pace.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02 (B)(2).  ALJ Anderson found C.E.L. to be markedly impaired in the area of social functioning, but found less than a marked degree impairment in the remaining three domains.[6]  AT 46.  This determination is well-supported by the record.

The only record entry to specifically address the question of whether C.E.L.'s impairments impose any marked limitations in the four specified areas under listing 112.02(B)(2) is an assessment form completed by Dr. J. Randall, an agency consultant, in December of 2003, based upon his review of C.E.L.'s records.  *See* AT 251-57.  In that childhood disability evaluation form, Dr. Randall notes his conclusion that plaintiff's impairments do not, either singly or in combination, meet or medically equal the criteria of any listed impairment.  *Id.*  The opinions of such an agency consultant, even one who has not examined the claimant, are properly accepted and relied upon by an ALJ, provided that they garner adequate support from other evidence in the record, and can provide

---

[6]     In his decision, ALJ Anderson assumed that plaintiff's circumstances clinically satisfy the criteria set forth in subsection A of each of the listings under consideration.  AT 46.  In arguing in support of the ALJ's determination, the government does not challenge that conclusion.

substantial evidence for an ALJ's finding.  *Barringer v. Comm'r of Soc.*

*Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.).  In this instance,

while the record discloses that C.E.L. has had some demonstrable

difficulties in the areas of age-appropriate cognitive or commutative

function, age-appropriate personal functioning, and the maintenance of

concentration, persistence or pace, the ALJ's conclusion that they do not

rise to a level sufficient to qualify as "marked" is well-supported by

substantial evidence in the record, including the opinion of Dr. Randall,

and is not squarely contradicted by opinions of either C.E.L.'s treating

sources or officials at the school which she attends.

### 2.   The ALJ's Determination Regarding Functional Equivalency

       Having rejected the proffered listings as neither met nor equaled in

C.E.L.'s circumstances, ALJ Anderson next reviewed the issue of

functional equivalency in accordance with the standards prescribed by

regulation.  AT 46-50.  Addressing the six specified domains, ALJ

Anderson concluded that C.E.L. suffers from a marked limitation in her

ability to interact and relate with others; less than marked limitation in the

areas of acquiring and using information, attending and completing tasks,

and self-care; and no limitation in moving about and manipulating objects

and in health and physical well-being.  *Id.*  In support of her challenge of the ALJ's determination, plaintiff asserts that in addition to the field of interacting and relating with others, C.E.L. also exhibits marked limitations in the realms of acquiring and using information, the ability to attend and complete tasks, and in caring for herself, thereby establishing functional equivalency.[7]

### a.    Acquiring and Using Information

This domain examines how well the claimant acquires and learns information, and how well he or she uses the information learned.  20 C.F.R. § 416.926a(g).  Undeniably, in results of intellectual testing plaintiff has scored in borderline to low average functioning range, and has struggled with certain of her educational courses.  *See* AT 239.  Her record, however, reveals at least some modicum of success in the areas

---

[7]        Plaintiff does not take issue with the ALJ's determination that C.E.L.'s impairment in the area of age-appropriate social functioning is marked and in particular does not argue that it should instead be appropriately categorized as extreme.  *See* Plaintiff's Brief (Dkt. No. 7) at 13-14, 20.   Similarly, plaintiff does not appear to challenge the ALJ's determinations that C.E.L. experiences no limitations in the areas of moving about and manipulating objects, and in health and physical well-being. While plaintiff's brief does make oblique reference to the sixth domain, which gauges the claimant's health and physical well-being, the evidence convincingly establishes that C.E.L. experiences only minimal if any limitations in that area, particularly in view of her participation in sports and the lack of any psychiatric hospitalizations or other non-conservative intervention, and plaintiff does not appear to press an argument to the contrary in connection with this domain.

of reading, math, writing and spelling during the sixth grade, resulting in her having progressed to the seventh grade.  It is also noted that C.E.L. has performed at average to above-average levels on achievement testing in various academic areas.  AT 145-46, 202-07, 246.  A response by officials at C.E.L.'s school to a request for information revealed that in their view, she does not experience any limitations in the domain of acquiring and using information.  AT 148.  In light of this response, and considering the other relevant record excerpts, I find that the ALJ's finding of a less than marked limitation in this domain is well-supported.

b.    Attending and Completing Tasks

This domain examines how well the claimant is able to focus and maintain attention, and how well he or she begins, carries through, and completes activities, including the pace at which the activities are performed and the ease with which he or she changes those activities.  20 C.F.R. § 416.926a(h).  According to the record, while C.E.L. has required modest extensions of time to complete certain school-related tasks, including testing, and to organize her work, psychological evaluations reflect that she focuses well, and has a good memory.  AT 189, 249.  A response of school officials to a request from the agency for information revealed difficulties in this area ranging from "a slight problem" in several

20

of the specified sub-categories to an "obvious problem" in the areas of organizational skills, completion of class and home work assignments, and working at a reasonable pace.  AT 149.  While upon *de novo* review the court could regard C.E.L.'s impairment in this area as marked, this conclusion is by no means compelled by the various relevant portions of the record.  Applying the requisite deferential standard, I am unable to conclude that the ALJ's assessment of C.E.L.'s limitation in this arena as less than marked lacks the support of substantial evidence.

c.   <u>Self-Care</u>

The area of self-care is another in which, according to the ALJ, C.E.L. suffers some limitation, though not rising to a level deemed to be "marked".  AT 49.  The domain of self-care examines how well the claimant maintains a healthy emotional and physical state, including how well he or she achieves getting physical and emotional wants and needs met in appropriate ways, how he or she copes with stress and changes in his or her environment, and whether he or she takes care of his or her own health, possessions, and living area.  20 C.F.R. § 416.926a(k).  The self-care inquiry is exceedingly fact-specific and heavily dependent upon the child's age and developmental stage.  *See* 20 C.F.R. § 416.926a(k)(2) (detailing the varying levels of self-care attributable to children ranging

21

from newborn to school-aged to adolescents).  While plaintiff cites some examples of personal hygiene shortcomings and isolated toileting issues, reports of school officials reveal that with the exception of the area of patience, C.E.L. experiences only slight problems in self-care, noting her "tendency to be upset when structured environment is 'upset'" but not otherwise noting problems which would appear to support a finding of a marked limitation.  AT 152.  The record thus similarly provides adequate support for the ALJ's finding of a less than marked limitation in this domain.

In sum, the ALJ's conclusion that C.E.L. experiences no extreme limitations in any of the six prescribed domains, and a marked limitation in only one, is supported by substantial evidence, thus failing to establish functional equivalency.

3.    Evaluation of Medical Evidence

In support of her challenge, plaintiff also argues that the ALJ improperly elevated opinions of non-examining consultants over those of her treating physicians, including principally Dr. Emery and Dr. Aronowitz. Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

22

substantial evidence.  *Veino*, 312 F.3d at 588;  *Barnett*, 13 F. Supp. 2d at

316.[8]  Such opinions are not controlling, however, if contrary to other

substantial evidence in the record, including the opinions of other medical

experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312

F.3d at 588.  Where conflicts arise in the form of contradictory medical

evidence, their resolution is properly entrusted to the Commissioner.

*Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical

opinions, he or she may consider a variety of factors including "[t]he

duration of a patient-physician relationship, the reasoning accompanying

the opinion, the opinion's consistency with other evidence, and the

physician's specialization or lack thereof[.]"  *Schisler v. Sullivan*, 3 F.3d

---

[8]      The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.   When we do
> not give the treating source's opinion
> controlling weight, we apply [various factors]
> in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

Plaintiff is mistaken both in her assertion that when arriving at his finding the ALJ accepted as controlling the opinions of non-examining state agency consultants, and rejected significant opinions of C.E.L.'s treating sources in conflict with his ultimate conclusions.  It bears noting that this is not the typical case, where a treating physician has rendered opinions regarding a claimant's limitations squarely in conflict with the findings of an ALJ.  While both Dr. Emery, C.E.L.'s counselor, and her treating psychiatrist, Dr. Aronowitz, have noted concerns in certain delineated areas, including with respect to C.E.L.'s aggressive and disruptive behaviors at home, both have also noted that with medication and counseling her condition improved significantly into the beginning of 2004, to the point when in March of 2004 it was noted that she had no

24

signs of psychosis and had intact cognitive processes, insight and judgment.  AT 186-87.

Moreover, it is not true that the ALJ blindly accepted contrary opinions of the state agency consultant.  While such consultants are recognized for their expertise and their opinions may provide substantial evidence, *Barringer*, 358 F. Supp. 2d at 79, in this instance, the opinions of the non-examining consultant in issue were specifically considered as "significant, but not controlling" by the ALJ in arriving at his conclusions. *See* AT 45.  In short, ALJ Anderson did not selectively accept opinions from the various medical sources in the record in order to support his finding of no disability, and no basis is provided for finding otherwise and overturning the Commissioner's determination.

### 4.    Assessment of Credibility

In her fourth and final point, plaintiff asserts that the ALJ improperly evaluated and rejected as only "generally credible" her hearing testimony and other statements given over time as C.E.L.'s mother.

An ALJ is entitled to considerable deference in the area of assessing witness credibility.  *See Ruiz v. Barnhart*, No. 03 Civ. 10128, 2006 WL 1273832, at *7 (S.D.N.Y. May 10, 2006) ("An ALJ's determination with respect to the credibility of witnesses is . . . given great deference because

the ALJ heard the testimony and observed the demeanor of the witnesses."); *Alvarado v. Barnhart*, 432 F. Supp. 2d 312, 319 (W.D.N.Y. 2006 (citing *Ruiz*); *see also Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984). It is well within the discretion of the Commissioner to evaluate the credibility of a plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence. *See Mimms*, 750 F.2d at 185-86; Social Security Ruling ("SSR") 96-7p. In deciding how best to exercise that discretion, an ALJ must consider a variety of factors which would ordinarily inform the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record. *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus v. Califano*, 615 F.2d 23, 27-28 (2d Cir. 1979)). When judging credibility, the ALJ must reach an independent judgment concerning the actual extent of a claimant's limitations. *Id*.

The regulations proscribe a specific process that the ALJ is to follow in weighing a claimant's testimony. The ALJ must first establish that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(b). If the ALJ finds such an impairment, the ALJ next evaluates the intensity and

persistence of the symptoms to determine how the symptoms limit the claimant's functioning.  *Id.* § 416.929(c).

In this instance the ALJ considered plaintiff's testimony regarding her daughter's condition, finding it to be "generally credible."  AT 47.  The ALJ did not explicitly reject, as not believable, any portion of the plaintiff's testimony, though he clearly placed primary emphasis on objective evidence in the record, including opinions of school officials and treating sources, to address the areas necessary to reach his determination, including functional equivalency.  Contrary to plaintiff's assertion, an ALJ is not required to accept or reject in full a claimant's testimony, nor must he or she explain why every statement of the claimant has not been fully accepted; instead, the ALJ is only required to address credibility as it relates to limitations associated with plaintiff's conditions.  *See* Social SSR 96-7p.  In this instance the ALJ did not squarely reject any portion of plaintiff's testimony in arriving at his finding regarding C.E.L.'s condition, and his determination in this regard thus provides no basis to overturn his decision.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

To be sure plaintiff's daughter, C.E.L., has demonstrated some difficulties both in terms of her behavior at home and, to a lesser degree,

27

in school, and in the pursuit of her educational experiences.  By all accounts, however, C.E.L. is receiving and responding well to professional treatment outside of the school environment, and has been afforded special education opportunities and accommodations to assist her in succeeding in school.  With these efforts and through appropriate medication, it appears that C.E.L. is able to experience a great deal of normalcy in her life.

Turning to the specifics of the ALJ's determination in this instance, the record amply supports his finding that plaintiff's symptoms do not either meet or medically equal any listed, presumptively disabling impairment, including those asserted by the plaintiff in support of her challenge.  The record further reveals that C.E.L. suffers a marked limitation in only one of the six specified domains in the functional equivalency algorithm, and thus she does not suffer from symptoms which are functionally equivalent to a listed disability.  The record also convincingly establishes that in reaching his conclusions, the ALJ neither inappropriately discounted the opinions of C.E.L.'s treating professionals, nor did he reject in any meaningful way the testimony of the claimant's mother as not being credible.

Accordingly, applying the requisite deferential standard, and finding

28

that the agency's determination resulted from the application of proper

legal principles and is supported by substantial evidence, it is hereby

RECOMMENDED that the defendant's motion for judgment on the

pleadings be GRANTED, the Commissioner's determination of no

disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of Court within ten (10) days.  FAILURE TO SO OBJECT

TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. §

636(b)(1) (2006); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984

F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED that the Clerk of the Court serve a copy

of this report and recommendation upon the parties in accordance with

this court's local rules.


Dated:      January 7, 2008
            Syracuse, NY


_____
David E. Peebles
U.S. Magistrate Judge